USCA1 Opinion

 

 February 22, 1995 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2191 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. AGUSTIN DE LEON RUIZ, Defendant, Appellant. ____________________ No. 93-2192 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. ORLANDO RODRIGUEZ RODRIGUEZ, Defendant, Appellant. ____________________ ERRATA SHEET The opinion of this Court, issued on February 1, 1995, is amended as follows: On page 7, line 13: change "two-point" to "two-level". On page 8, line 15: change "two-point" to "two-level". On page 9, line 4: change "two-point" to "two-level". UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-2191 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. AGUSTIN DE LEON RUIZ, Defendant, Appellant. ____________________ No. 93-2192 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. ORLANDO RODRIGUEZ RODRIGUEZ, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen C. Cerezo, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Boyle,* Senior District Judge. _____________________ ____________________  ____________________ *Of the District of Rhode Island, sitting by designation. Carlos R. Noriega for appellant Agustin De Leon Ruiz. _________________ Jose A. Quiles Espinosa, Senior Litigation Counsel, with whom _________________________ Guillermo Gil, United States Attorney, and Antonio R. Bazan, Assistant _____________ ________________ United States Attorney, were on brief for the United States. Luis F. Abreu Elias on brief for appellant Orlando Rodriguez _____________________ Rodriguez. Jose A. Quiles Espinosa, Senior Litigation Counsel, Guillermo _________________________ _________ Gil, United States Attorney, and Antonio R. Bazan, Assistant United ___ ________________ States Attorney, on brief for the United States. ____________________ February 1, 1995 ____________________ BOUDIN, Circuit Judge. On August 26, 1992, appellants ______________ Agustin De Leon Ruiz and Orlando Rodriguez Rodriguez, along with three other individuals, were charged in a four-count indictment concerning a May 1992 drug transaction. Appellants were both indicted for possessing two kilograms of cocaine with intent to distribute (count II), 21 U.S.C. 841(a)(1), and aiding and abetting the use of firearms during the commission of a drug offense (count III), 18 U.S.C. 924(c)(1). De Leon was indicted for using a communication facility to facilitate the commission of a crime (count I), 21 U.S.C. 843(b), while Rodriguez was indicted for possessing firearms with obliterated serial numbers (count IV), 18 U.S.C. 922(k). After a five-day jury trial, De Leon was convicted on the communication and drug charges (counts I and II) but acquitted on the firearms charge (count III). Rodriguez was convicted on the drug charge (count II) but acquitted on both of the firearms counts with which he was charged (counts III and IV). Following a sentencing hearing, De Leon and Rodriguez were sentenced to 78 and 87 months, respectively. On appeal, Rodriguez challenges both his conviction and sentence, while De Leon challenges only his sentence. 1. The evidence adduced at trial, taken in the light most favorable to the verdict, United States v. Torres- ______________ _______ Maldonado, 14 F.3d 95, 100 (1st Cir.), cert. denied, 115 S. _________ ____________ -3- -3- Ct. 193 (1994), is as follows. On May 5, 1992, Pablo Rivera, an undercover DEA agent, set up a drug buy through a confidential informant for two kilograms of cocaine. The informant spoke with De Leon on the telephone on five different occasions that day to negotiate the transaction; these conversations were all recorded and the recordings played at trial. In those conversations the price for each kilogram was set at $18,000. Through De Leon's drug connections--two individuals named Lebron and De Jesus-- Rodriguez was contacted to supply the cocaine. Lebron and De Jesus both testified for the government at trial pursuant to a plea agreement. According to their testimony, the drug buy was scheduled to take place in the parking lot of a local supermarket on the evening of May 5, 1992. On that day, around 5:00 p.m., De Jesus telephoned Rodriguez to inquire about obtaining the two kilograms of cocaine; Rodriguez told De Jesus to come to his family's restaurant, El Muelles, to discuss the matter. De Jesus met with Rodriguez at the restaurant, and Rodriguez told De Jesus that he had the drugs in the amount De Jesus needed. Rodriguez instructed De Jesus to meet him at 7:00 p.m. at De Jesus' apartment in the El Coto public housing project. De Jesus then returned to his apartment, and Lebron and De Leon arrived soon after. On De Jesus' instruction, Lebron and De Leon went to the supermarket -4- -4- around 6:45 p.m. to check out the prospective buyer, whom they did not know. After speaking with Agent Rivera and the confidential informant, and seeing the money, Lebron and De Leon returned to De Jesus' apartment. Rodriguez and his brother, Carlos, arrived at the apartment shortly thereafter, sometime around 7:00 p.m. All five then left for the supermarket. Lebron drove to the supermarket in a Honda CRX with De Leon; Rodriguez drove a beige Oldsmobile, accompanied by his brother and De Jesus. At the supermarket, Lebron parked the Honda next to Agent Rivera's car; Rodriguez parked the Oldsmobile behind and perpendicular to the Honda, about fifteen feet from where Agent Rivera was standing. From his vantage Agent Rivera was able to view the driver of the Oldsmobile, whom he later identified at trial as Rodriguez. From a plastic bag located on the front seat of the car, Rodriguez removed one kilogram of cocaine. He gave the plastic bag with the remaining kilogram to De Jesus and told him to take just one because the situation looked "nebulous." De Jesus exited with the kilogram of cocaine, and Rodriguez then drove the Oldsmobile slowly across the parking lot. De Jesus approached Agent Rivera, who was standing near his car with De Leon and Lebron, and handed him the drugs. After protesting that the deal was for two kilogram, Agent Rivera -5- -5- raised the trunk of his car as if to stash the drugs but actually signalling the arrest. Police immediately converged on the scene. Agent Rivera observed Lebron reach for his waist, subdued him and recovered a gun tucked in his belt; De Jesus was also found to have a gun in his belt. Meanwhile, De Leon sought to run away and was caught by DEA agents after a brief chase. Rodriguez escaped in the Oldsmobile, but turned himself in a few days later when he learned that a warrant for his arrest had been issued. In challenging the sufficiency of the evidence, Rodriguez assumes that the only evidence supporting the jury's verdict is Agent Rivera's identification testimony that he observed Rodriguez driving the beige Oldsmobile. Given the unfavorable conditions under which Agent Rivera viewed the driver--e.g, night, moving car, tense situation-- ___ Rodriguez argues that Agent Rivera's identification is unreliable and thus insufficient. In fact, Lebron and De Jesus testified extensively about Rodriguez' involvement in the transaction and identified him as the source of the cocaine. Rodriguez apparently believes that because the jury acquitted him on the two gun counts, it must have rejected in __ toto the testimony of Lebron and De Jesus; both had testified ____ unequivocally that Rodriguez had given them the guns used in -6- -6- the drug buy. But the jury is free to believe some portions of a witness' testimony and not others. Here, the testimony of Lebron and De Jesus connecting Rodriguez to the guns was relatively brief while their testimony connecting Rodriguez to the drugs was extensive, detailed and uniform. Alternatively, the jury may very well have believed the testimony that Rodriguez provided the guns, but nevertheless concluded that the government had failed to prove all the elements of the specific firearm offenses. Count III required proof that a firearm was used during and in relation to a drug transaction; here the jury may (wrongly) have thought it mattered that Rodriguez was not carrying the firearms at the scene or that they were not drawn or fired. Count IV required proof that Rodriguez knew that the serial numbers of the weapons were obliterated. United States v. ______________ Haynes, 16 F.3d 29, 33-34 (2d Cir. 1994). ______ Rodriguez also asserts that the district court erred at sentencing in giving him a two-level enhancement under U.S.S.G. 2D1.1(b)(1) for possession of a dangerous weapon during a drug transaction. He contends that his acquittal on the two gun charges precludes a finding that he "possessed" a gun in connection with the drug offense. He is mistaken. We have previously held that because of the difference in burden of proof, an acquittal on a charge of using a firearm in connection with a drug transaction does not -7- -7- foreclose a sentencing enhancement for possession of a gun during a drug transaction. United States v. Pineda, 981 F.2d _____________ ______ 569, 574 (1st Cir. 1992). In addition, the sentencing enhancement requires only that it have been reasonably foreseeable that an accomplice would possess a gun, since under the guidelines a defendant is accountable for reasonably foreseeable conduct undertaken by others to advance their joint criminal venture. U.S.S.G. 1B1.3(a)(1)(B); United States v. Bianco, 922 F.2d 910, 911- _____________ ______ 14 (1st Cir. 1991). Here, there was direct testimony that Rodriguez gave Lebron one of the weapons, telling Lebron to watch De Jesus' back, and that he gave De Jesus a gun as well. Further, we have held that the nature of a large-scale drug transaction permits the sentencing court to infer that an accomplice's possession of a gun was reasonably foreseeable to the defendant. United States v. Sostre, 967 F.2d 728, 731-32 _____________ ______ (1st Cir. 1992); Bianco, 922 F.2d at 912. The district court ______ drew the inference explicitly, citing to both Bianco and ______ Sostre. ______ 2. De Leon challenges the district court's failure to award him a two-level reduction for acceptance of responsibility under U.S.S.G. 3E1.1(a). Before trial, De Leon offered to plead guilty to the drug charges (counts I and II) but refused to plead guilty to the firearms charge -8- -8- against him (count III); De Leon steadfastly denied knowledge of the guns. The government was unwilling to dismiss the firearms charge, based on a Department of Justice policy called "Project Triggerlock" requiring full prosecution of all gun offenses. At trial, the jury convicted De Leon on the drug transaction charges, but acquitted him on the firearms offense. Because the jury vindicated him on the firearms charge, and because he had previously been willing to plead guilty to the criminal charges on which the jury found him guilty, De Leon argues that he should have received a two-level reduction in his base offense level. At sentencing, the government argued that De Leon could have pled guilty to the drug charges and contested only the gun charge at trial; since he chose to go forward to trial on the drug charges, says the government, no reduction is warranted.1 At sentencing, the district court denied the adjustment without explaining its reasons. A sentencing court has very wide latitude in determining whether to grant this adjustment, United States v. Tabares, ______________ _______ 951 F.2d 405, 411 (1st Cir. 1991), and a finding on this  ____________________ 1At oral argument in this case, the government set forth a number of other reasons why the denial of the departure was proper. We will not consider these claims, because claims raised for the first time at oral argument are not properly preserved. United States v. Nueva, 979 F.2d 880, 885 n.8 ______________ _____ (1st Cir. 1992), cert. denied, 113 S. Ct. 1615 (1993). ____________ -9- -9- issue is normally set aside only if it was clearly erroneous. United States v. Munoz, 36 F.3d 1229, 1236 (1st Cir. 1994), _____________ _____ petition for cert. filed, Jan. 10, 1995 (No. 94-7606). ___________________________ Still, a grant or denial of the reduction may raise issues that involve a legal interpretation of the guidelines. Here, since the sentencing court did not set forth its reasons for denying the reduction, we will assume arguendo that it did ________ so, as De Leon posits, because De Leon went to trial on the drug charges. The reduction for acceptance of responsibility serves two distinct purposes: to recognize a defendant's sincere remorse and to reward a defendant for saving the government ___ from the trouble and expense of going to trial. See U.S.S.G. ___ 3E1.1 comment. (n.2). According to the guideline commentary, the reduction is ordinarily not available to a defendant who has put the government to its proof, however remorseful he or she might later be. Id. See United States ___ ___ _____________ v. Bennett, 37 F.3d 687, 696-98 (1st Cir. 1994); Munoz, 36 _______ _____ F.3d at 1236. The commentary describes as "rare" a case in which a defendant can go to trial and still receive a reduction; the example it gives is a defendant who goes to trial to preserve issues unrelated to factual guilt, e.g., to ____ mount a constitutional challenge to the statute. U.S.S.G. 3E1.1 comment. (n.2). -10- -10- In this case, De Leon did not refuse to plead to the drug counts in order to preserve a legal challenge to the statute but because the government would not dismiss the firearms count in exchange. De Leon retained the option to plead guilty to the former and to contest the latter, Pineda, ______ 981 F.2d at 576; instead, he chose to roll the dice in the hope that he would be acquitted on all counts. This was his choice, but the fact remains that he could have pleaded to counts I and II, preserved his defense on count III, and spared the government the necessity of proving his guilt at trial on the drug counts. De Leon complains that, had he pled guilty to the drug charges, the jury would have wondered why he was not charged with a drug offense like his codefendant and might have held it against him. Speculation would not have been necessary: De Leon's plea of guilty on the drug counts would have been admissible at trial as an admission that De Leon was involved in the drug transaction. United States v. Haddad, 10 F.3d _____________ ______ 1252, 1258 (7th Cir. 1993). See also United States v. _________ ______________ Williams, 900 F.2d 823, 825 (5th Cir. 1990) (Rule 404(b) ________ inapplicable). Even so De Leon would have remained free to contest the firearms charge. Thus, even assuming that the district court gave great weight to De Leon's refusal to plead to the drug counts, we see no error. On the contrary, absent unusual facts, we -11- -11- will--as the guideline commentary instructs--generally sustain a district court that denies acceptance of responsibility to a defendant who declined to plead guilty on the count or counts of which he was convicted. See generally _____________ Bennett, 37 F.3d at 696-97. The example of a constitutional _______ challenge, given by the guideline commentary as an exception, does not purport to be an exhaustive list of exceptions. Id. ___ at 698 n.16. But it is quite another matter to hold that a district court exceeds its authority when in the ordinary case it refuses such a reduction to a defendant who has refused to plead. A few circuits may arguably be more ready to reverse district courts who refuse such reductions. However, the cases often involve aggravating circumstances not present here: in United States v. Rodriguez, 975 F.2d 999 (3d Cir. _____________ _________ 1992), the government withdrew its agreement to the defendant's plea bargain because a co-defendant declined to plead; in United States v. McKinney, 15 F.3d 849 (9th Cir. _____________ ________ 1994), the court believed that the defendant would have pled guilty if the district court had provided a fair opportunity. No such circumstances appear in the present case. The guideline admittedly imposes a tough choice on a defendant like De Leon, cf. United States v. Mezzanatto, 63 ___ _____________ __________ U.S.L.W. 4060, 4064 (U.S. Jan. 18, 1995); but it is not unconstitutional, Munoz, 36 F.3d at 1237, and the policy _____ -12- -12- determination that underlies the guideline has been entrusted to others. Because the guideline serves two different purposes, differences will remain among judges who apply the guideline, depending on which purpose is emphasized in a given case. We are satisfied that the district court was not obliged in this case to order a reduction and that nothing so unusual was urged by De Leon as to require an explanation from the district court. Affirmed. ________ -13- -13-