# United States Court of Appeals
## For the First Circuit

———————————

No. 99-1547

UNITED STATES,
Appellee,

v.

JOHN BALTAS, SR., a/k/a Cadillac Jack,
a/k/a John DiPinto,

Defendant, Appellant.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

———————————

Before

Boudin and Lipez, Circuit Judges,

Casellas,* District Judge.

———————————

Robert David Dimler, by appointment of the Court, with whom The Law Office of Robert D. Dimler , was on brief for appellant John Baltas, Sr.
Kirby A. Heller, Attorney, Department of Justice, with whom Donald K. Stern, United States Attorney, and Andrew Levchuk, Assistant U.S. Attorney, were on brief, for appellee.

———————————

January 2, 2001

———————————

_____

*       Of the District of Puerto Rico, sitting by designation.

**CASELLAS, <u>District Judge</u>.** Following a jury trial, defendant-appellant John Baltas, Sr.[1] (hereinafter "Baltas") was convicted of conspiracy to possess with intent to distribute and to distribute heroin, in violation of 21 U.S.C. § 846. The district court sentenced him to 188 months in prison, followed by 5 years of supervised release. Baltas now challenges his conviction and sentence alleging a potpourri of pretrial, trial, and sentencing issues. Because we conclude that none of Baltas's arguments have merit, we affirm.

## I. BACKGROUND

A federal grand jury indicted Baltas and twelve other individuals for various crimes arising out of their involvement in the Connecticut and Massachusetts chapters of the Diablos Motorcycle Club (hereinafter the "Diablos," or the "Club"). Particularly, Baltas was charged, either alone or in combination with other defendants, with conspiracy to conduct and actually conducting the affairs of an enterprise through a pattern of racketeering activity, respectively, 18 U.S.C. §§ 1962(d) (count 1, "RICO conspiracy") and 1962(c) (count 2,

_____

[1]Baltas was tried and convicted with a number of other defendants. Their appeals were heard at the same time, and subsequent decisions will address their appeals. <u>United States</u> v. <u>Houle</u>, No. 99-1310 (1st Cir. filed February 10, 1999); <u>United States</u> v. <u>Lafreniere</u>, No. 99-1318 (1st Cir. filed February 17, 1999).

"substantive RICO"); conspiracy to possess with intent to distribute and to distribute heroin, 21 U.S.C. § 846 (count 32); and possession and interstate transportation of firearms as a convicted felon, 18 U.S.C. § 922(g)(1) (counts 40 and 41). The indictment also sought forfeiture of certain property belonging to Baltas.

Before trial, Baltas unsuccessfully moved to sever and to suppress certain evidence relevant to his count of conviction. At the end of the government's case, he moved for judgment of acquittal and to strike certain evidence relating to the RICO counts. The district court granted his motion for acquittal as to these counts, denying it as to the remaining portions of the indictment.[2] In light of this ruling, the court then granted Baltas's motion to strike.

Baltas also requested an instruction on the defense of entrapment, which the district court denied. During the jury charge, Baltas did not object to the omission of an entrapment instruction. Finally, Baltas leveled various challenges to his presentence report, and moved for downward departure without success.

On appeal, Baltas assigns error to the district court's denials of his pretrial, trial and sentencing requests. We sketch the facts contained in the record in the light most favorable to the jury's verdict. See United States v. González-Vázquez, 219 F.3d 37, 40 (1st

---

[2]Baltas renewed his motion at the end of his case, but to no avail.

Cir. 2000). We supplement our account as it becomes necessary to the discussion of Baltas's particular claims of error.

The Diablos originated in San Bernardino, California in the 1960's, and then expanded to other areas of the country. At the times relevant to this appeal, the Diablos were a national organization with chapters in California, Connecticut, Florida, Indiana, Massachusetts, and New Hampshire. They were governed by a written constitution, which conditioned membership, *inter alia*, upon being at least 21 years of age, Caucasian, and owning a firearm and a Harley-Davidson of a particular size. Membership was by invitation only, and neither women nor African-Americans were allowed. Members first had to serve some time as "prospects," a role similar to that of a pledge in a fraternity, before being eligible for full membership. The Diablos also had a governing structure which included both national and chapter officers. Baltas was one of the Club's founders and its national president.

One of the prosecution's primary witnesses at trial was William Alvis (hereinafter "Alvis"). Before becoming a Diablo, Alvis had been a member of another motorcycle club, the Barbarians, where he became familiarized with the biker culture and language. While affiliated with the Barbarians, Alvis was charged with the commission of several crimes not related to the instant indictment, and eventually began cooperating with government authorities. He infiltrated the

-4-

Diablos at the behest of the FBI.  One law enforcement concern with the Diablos was three unsolved motorcycle-club related murders, in which it was suspected that members of the Diablos had been involved.

At trial, Alvis stated that one important characteristic of the Club was the sense of brotherhood among its members.  Alvis's trust and confidence within the Diablos, together with his familiarity with the biker culture, allowed him to become a prospect and later a full-fledged member.  He developed close relationships with several members of the Club, and ultimately became its vice president.  Alvis was thus the FBI's "eyes and ears inside of the Diablos organization."

Because of his status within the Diablos, Alvis was able to gather for the FBI valuable information about the Club's structure and day-to-day operations.  He was also able to introduce several undercover agents into the Club, and, with their help, orchestrate a number of criminal schemes involving the Diablos.  One of these schemes concerned a reverse-sting heroin deal.  The government's evidence of the circumstances surrounding this scheme consisted mainly of Alvis's trial testimony, aided by evidence derived from the interception of certain communications made pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. (hereinafter "Title III").  What follows is a summary of this evidence.

By the end of July of 1995, the Club was facing financial difficulties.  Alvis, who at that time was treasurer of the

Massachusetts chapter, held a meeting where he informed chapter members of the situation and told them that they would probably be evicted from the clubhouse because the rent was in arrears. As a way of generating money for the chapter, Alvis suggested that some members assist him in a drug deal. Alvis specifically told the Diablos that he needed them to "[r]un security for [a] transportation of heroin." The plan consisted in picking up the drugs at one point and delivering them at another. He also explained that each participant would be paid $500, which money would be contributed to the chapter's treasury.

Baltas, who happened to be present at the meeting, agreed to the idea. He voiced his support by reminding members of their commitment to the Club, and even proposed a few ideas for carrying out the plan without attracting attention upon the Diablos. Moreover, Baltas directed Alvis to "[t]ake the guys . . . best suited for the job."

The following day, Alvis traveled to Connecticut for a chapter meeting, where he met Baltas at the chapter's clubhouse. Baltas asked Alvis how many members had volunteered to participate in the deal, and offered to recruit additional help upon learning that only two had come forward. As promised, Baltas talked to two other members who later got in contact with Alvis and eventually participated in the transaction.

The deal finally took place on August 7, 1995, and Baltas

and Alvis met in Connecticut the following day. Alvis gave Baltas $250.00 for his recruiting efforts. Baltas did not directly participate in the transaction.

## II. DISCUSSION

### A. Suppression

Baltas contends that the district court erred in denying his motion to suppress the evidence obtained through electronic surveillance. Below, Baltas sought suppression of the intercepted communications alleging: (1) that the issuance of the warrant was not grounded on probable cause; (2) that the accompanying affidavit failed to show the unlikely success of alternative investigative procedures; (3) that in executing the warrant, the government failed to minimize the interceptions; (4) that the interceptions went beyond the scope of the warrant; and (5) that the warrant failed to specify the types of communications to be intercepted. Upon referral by the district court, the magistrate judge, after conducting an evidentiary hearing, issued a report and recommendation that the motion be denied. Adopting the magistrate judge's report and recommendation, the district court denied the motion.

Here, Baltas renews his attack on the government's minimization procedures. Specifically, Baltas challenges that the intercepting agents failed to minimize the interception of communications from approximately 9:04 p.m. until 10:09 p.m., on April

21, 1995. He further alleges that "during the spot checks after 10:09 p.m., the agents obviously listened to more of the conversations than was necessary to have been able to know that they should have stopped listening." Focusing on these alleged violations, Baltas protests that all the evidence obtained through electronic surveillance should have been suppressed.

We affirm the district court's denial of Baltas's motion for substantially the reasons cogently set forth in the magistrate judge's report and recommendation adopted by the district court. "[W]hen a lower court produces a comprehensive, well-reasoned decision an appellate court should refrain from writing at length to no other end than to hear its own words resonate." United States v. Vélez Carrero, 140 F.3d 327, 329 (1st Cir. 1998) (quoting Lawton v. State Mutual Life Assurance Co. of America, 101 F.3d 218, 220 (1st Cir. 1996)). We only hesitate to add two comments.

First, the evidence obtained by the April 21 interception was not introduced at trial in relation to Baltas's count of conviction, to wit: conspiracy to possess with intent to distribute heroin. In fact, none of the communications intercepted on April 21 were introduced at trial. Thus, any possible error in adequately minimizing such interception was harmless.

Second, total suppression of electronic surveillance evidence is not appropriate unless the moving party shows that there

was a "taint upon the investigation as a whole sufficient to warrant [such] sweeping relief . . . ." United States v. Charles, 213 F.3d 10, 23 (1st Cir. 2000) (quoting United States v. Hoffman, 832 F.2d 1299, 1307 (1st Cir. 1987)).  That is, errors in minimizing one particular interception within the context of a lengthy and complex investigation, such as the one involved in this case, do not automatically warrant the suppression of all the evidence obtained through electronic surveillance.  Even assuming that the government failed to minimize the April 21 interception, total suppression would not follow, because Baltas has not demonstrated that the entire surveillance was tainted.

## B. Severance

Baltas next argues that the district court erred in denying his motion for severance.  He also assigns fault to the district court's refusal to hold a pretrial hearing on the admissibility of coconspirator statements.

Baltas was originally charged in a superseding indictment with a controlled substances law violation.  Although the indictment also included various RICO charges, Baltas was not targeted in any of them.  Accordingly, he moved to sever the RICO from the non-RICO counts, and his trial from those of his co-defendants.  The magistrate judge denied the motion without prejudice.  Following the filing of the second superseding indictment, which charged Baltas with RICO conspiracy and substantive RICO, he renewed his motion before the

district court, but to no avail.

In this case, joinder of counts and defendants in the second superseding indictment was proper. Of the 28 racketeering acts pertinent to the RICO conspiracy alleged in count 1, two implicated Baltas, predicate acts 3 (kidnapping) and 23 (conspiracy to possess with intent to distribute heroin). These acts were also charged as substantive RICO violations. Furthermore, act 23 was separately charged as an offense in count 32, Baltas's count of conviction. Thus, the counts were properly joined under Rule 8(a) as charging "two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed. R. Crim. P. 8(a). See United States v. Zannino, 895 F.2d 1, 16 (1st Cir. 1990) ("offenses committed pursuant to the same (charged) racketeering enterprise and conspiracy may be joined in a single indictment"). The defendants were also properly joined. See United States v. Boylan, 898 F.2d 230, 245 (1st Cir.) ("So long as there is a responsible basis for the averments, charging an omnibus RICO conspiracy normally supplies the glue necessary to bond multiple defendants together in a single proceeding where all are accused of participating in the conspiracy.").

Baltas insists nonetheless that he was unduly prejudiced by the district court's denial of his motion for severance. Under Rule 14, a district court may order separate trials of counts or defendants "[i]f it appears that a defendant or the government is prejudiced by a

joinder of offenses or of defendants in an indictment. . . or by such joinder for trial together . . . ." Fed. R. Crim. P. 14. In making this determination, the district court enjoys wide latitude. <u>See</u> <u>United States</u> v. <u>Rogers</u>, 121 F.3d 12, 16 (1st Cir. 1997). We review a district court's refusal to sever for "manifest abuse of discretion," <u>United States</u> v. <u>DeLeón</u>, 187 F.3d 60, 63 (1st Cir. 1999), reversing only upon a "strong showing of evident prejudice," <u>United States</u> v. <u>O'Bryant</u>, 998 F.2d 21, 25 (1st Cir. 1993), that joinder "deprived defendant of a fair trial, resulting in a miscarriage of justice," <u>United States</u> v. <u>Tejeda</u>, 974 F.2d 210, 219 (1st Cir. 1992) (citations and internal quotation marks omitted). Because Baltas has failed to shoulder this burden, we affirm the district court's ruling.

Baltas maintains that he was prejudiced because the jury was allowed to hear evidence that would have been irrelevant or inadmissible against him in a separate trial on the drug and firearms counts. In trying to prove his point, Baltas cursorily refers to the evidence relating to the predicate acts upon which the RICO charges rested, arguing that such evidence would not have been admissible in a trial without the RICO charges. He further contends that a separate trial would have inoculated the jury's verdict from being tainted by spillover prejudice. None of these arguments have merit.

First, "[t]his court's rule is that those 'who are indicted together should be tried together,' and the district court's

joinder in this case appropriately followed that presumption." DeLeón, 187 F.3d at 63 (quoting O'Bryant, 998 F.2d at 25).

Second, Baltas's allegations of prejudice are rather conclusory, and thus do not suffice to overcome the presumption in favor of joinder. See United States v. Neal, 36 F.3d 1190, 1204 (1st Cir. 1994) (conclusory allegations held insufficient to show requisite prejudice). "There is always some prejudice in any trial where more than one offense or offender are tried together — but such 'garden variety' prejudice, in and of itself, will not suffice." Boylan, 898 F.2d at 246. Moreover, we have consistently reiterated our reluctance to second-guess a lower court's refusal to sever "[e]ven where large amounts of testimony are irrelevant to one defendant, or where one defendant's involvement in an overall agreement is far less than the involvement of others . . . ." Id. at 246; see also United States v. Levy-Cordero, 67 F.3d 1002, 1007 (1st Cir. 1995); United States v. DeMasi, 40 F.3d 1306, 1313 (1st Cir. 1994); O'Bryant, 998 F.2d at 26.

Third, the district court took appropriate measures to prevent potential spillover prejudice by instructing the jury, both during the preliminary and closing charges, to consider the evidence separately as to each count of the indictment, and to determine guilt on an individual basis. Moreover, as it is more particularly discussed infra, the court also gave limiting instructions during trial as to the admissibility of certain potentially prejudicial evidence pertaining to

-12-

Baltas. Baltas's acquittal on the firearms charges (counts 40 and 41) demonstrates that the jury was able to follow these instructions. See DeLeón, 187 F.3d at 64 (considering a discriminating verdict as evidence that the jury was capable of following the district judge's instructions); United States v. Edgar, 82 F.3d 499, 504 (1st Cir. 1996) (same); Neal, 36 F.3d at 1205 (same); Boylan, 898 F.2d at 246 (same); see also United States v. Tracy, 989 F.2d 1279, 1284 (1st Cir. 1993) ("The jury's selectivity in its verdict affords 'reasonably good assurance' that spillover prejudice did not result from joinder of offenses.") (quoting United States v. Natanel, 938 F.2d 302, 308 (1st Cir. 1991).

Baltas alternatively argues that even if severance was not warranted, the district court should have mitigated spillover prejudice by holding a pretrial hearing on the admissibility of coconspirator hearsay statements pursuant to United States v. James, 590 F.2d 575 (5th Cir.) (en banc). During the proceeding below, Baltas made various requests for a ruling on the admissibility of coconspirator statements relating to the RICO charges under Fed. R. Evid. 801(d)(2)(E). The court denied the requests and provisionally allowed the evidence, declining to make a final admissibility determination, in accordance with United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977).

As a consequence of its ruling on Baltas's Rule 29 motion, the district court struck the evidence at issue either in its entirety,

-13-

or for all but credibility purposes.  Baltas argues that because the trial court had ultimately to instruct the jury to either compartmentalize or totally disregard this evidence, he was unfairly prejudiced by the court's refusal to conduct a pretrial James hearing. According to him, if the trial court had made its evidentiary ruling before trial, thereby preventing the evidence from reaching the jury, his trial "would not have been contaminated by such a large amount of harmful inadmissible evidence."

The Fifth Circuit in James held that "[t]he district court should, whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it before admitting declarations of a coconspirator."  590 F.2d at 582.  The circuit court recognized, however, that if the district court "determines it is not reasonably practical to require a showing to be made before admitting the evidence, [it] may admit the statement subject to being connected up."[3]  Id.  All in all, "[t]his is a matter committed to the broad discretion of the trial court." United States v. Fragoso, 978 F.2d 896, 900 (5th Cir. 1992) (approving deferral of determination to admit the statement until the close of the government's case); see also United States v. González-Balderas, 11

_____

[3]"In that event," similar to the procedure followed in this circuit under United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977), "the court may conditionally admit the statement subject to a subsequent final determination," United States v. González-Balderas, 11 F.3d 1218, 1224 (5th Cir. 1994).

F.3d 1218, 1224 (5th Cir. 1994) (same).

The usual course of action in this circuit, however, is to admit the hearsay evidence provisionally, "subject to [a] final Petrozziello determination, which should be made 'at the close of all the evidence' and 'out of the hearing of the jury.'" United States v. Portela, 167 F.3d 687, 702 (1st Cir. 1999) (quoting United States v. Ciampaglia, 628 F.2d 632, 638 (1st Cir. 1980)). In this case, the district court appropriately determined to admit the statements provisionally, even though it had to subsequently strike some of them, in whole or in part, due to its ruling on Baltas's Rule 29 motion. In so doing, the court took the necessary precautions to minimize spillover prejudice by giving appropriate cautionary instructions to the jury. Because Baltas has not shown that the district court's determination to admit the evidence provisionally was clearly erroneous, and since we have already determined that the selective verdict demonstrates that the jury was able to follow the court's instructions, we sustain the trial court's determination. See Portela, 167 F.3d at 703 ("We will sustain the trial court's determination [regarding admission of coconspirator statements unless it is clearly erroneous.").

## C. Sufficiency of the Evidence

Baltas further presses the claim that the evidence was insufficient to convict him on count 32, insisting that the trial court

should have granted his motion for judgment of acquittal. We review these claims de novo, see United States v. Collazo-Aponte, 216 F.3d 163, 193 (1st Cir. 2000), unitarily applying the familiar sufficiency-of-the-evidence standard, see United States v. Hernández, 218 F.3d 58, 64 n.4 (1st Cir. 2000) ("'[C]hallenges to the sufficiency of the evidence and to the denial of the motion for judgment of acquittal raise a single issue'" and thus we apply the traditional sufficiency of the evidence standard to these claims.") (quoting United States v. Morillo, 158 F.3d 18, 22 (1st Cir. 1994)).

Under this standard, we review all the evidence, direct and circumstantial, in the light most favorable to the prosecution, drawing all reasonable inferences consistent with the verdict, and avoiding credibility judgments, to determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt. See, e.g., United States v. Marrero-Ortiz, 160 F.3d 768, 772 (1st Cir. 1998); United States v. Laboy-Delgado, 84 F.3d 22, 26 (1st Cir. 1996). It is immaterial that a possible rendition of the record could support a not guilty verdict; it is enough that a rational trier of fact could have construed the evidence to find guilt beyond a reasonable doubt. See Hernández, 218 F.3d at 64; Laboy-Delgado, 84 F.3d at 26-27.

"The insufficiency of the evidence in this case," Baltas asserts, "turns on one specific point," to wit: that there was no evidence that he conspired to possess heroin with intent to distribute

-16-

and to distribute it. He protests that "[t]he government's evidence, at best, proved that [he] joined a conspiracy to aid and abet a drug deal, but not to actually deal in drugs." According to Baltas, the evidence failed to show that he was involved in the selling or buying of the drugs.

"'To prove a drug conspiracy charge under 21 U.S.C. § 846, the government is obliged to show that a conspiracy existed and that a particular defendant agreed to participate in it, intending to commit the underlying substantive offense.'" Collazo-Aponte, 216 F.3d at 191 (quoting United States v. Sepúlveda, 15 F.3d 1161, 1173 (1st Cir. 1993)). Thus, "the government must show two kinds of intent: 'intent to agree and intent to commit the substantive offense.'" Hernández, 218 F.3d at 65 (quoting United States v. Gómez-Pabón, 911 F.2d 847, 852 (1st Cir. 1990)). It need not show, however, "that a given defendant took part in all aspects of the conspiracy." Sepúlveda, 15 F.3d at 1173. As the Supreme Court in Salinas v. United States, 522 U.S. 52, 65 (1997) explained:

> A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense.

-17-

The evidence established that Baltas actively participated in the preliminary discussions of the plan for the heroin transaction by encouraging Club member participation and suggesting ways in which to minimize the risk of exposure. He was well aware that the plan entailed the transportation of the heroin from one location to another. Furthermore, he played an active role in arranging for the provision of armed security for the deal.

Based on this evidence a reasonable jury was entitled to find, beyond a reasonable doubt, that Baltas agreed to participate in a conspiracy with the intent to distribute heroin. The fact that he may not have been personally involved in selling or buying the drugs is of no importance, for it is well settled that "'proof of direct participation in the sale of drugs is not required to convict in a drug conspiracy case.'" Collazo-Aponte, 216 F.3d at 193 (quoting Marrero-Ortiz, 160 F.3d at 773). What is important is that he was cognizant that the heroin would be delivered from one place to another in the course of the distribution; such delivery alone constitutes distribution for purposes of the drug statute. 21 U.S.C. § 802(11) (defining "distribute" to mean "deliver."); see also United States v. Ocampo-Guarin, 968 F.2d 1406, 1410 (1st Cir. 1992). Therefore, his conviction must be affirmed.

### D. Instructional Claim

Baltas also assigns error to the district court's denial

-18-

of his request for an instruction on entrapment.  Because Baltas did not register a post-charge objection to the omission of an entrapment charge, as mandated by Fed. R. Crim. P. 30,[4] we review the district court's decision for plain error.  See United States v. Arthurs, 73 F.3d 444, 448 (1st Cir. 1996).

To be entitled to a defense on entrapment, a defendant must produce "some evidence" of both improper government inducement and lack of criminal predisposition.  See United States v. Gamache, 156 F.3d 1, 9 (1st Cir. 1998).  The defense is not available unless both elements exist.  See United States v. Vega, 102 F.3d 1301, 1304 (1st Cir. 1996).

Baltas challenges that Alvis improperly induced him to join the conspiracy by exploiting his Diablo "pride and joy," and by "playing up the financial troubles of the club, and the need for revenue."  This is a far stretch.  Improper inducement "goes beyond providing an ordinary opportunity to commit a crime." United States v. Gendron, 18 F.3d 955, 961 (1st Cir. 1994) (citation and internal quotation marks omitted).  "An inducement consists of an 'opportunity' *plus* something else—typically, excessive pressure by the government

---

[4]Rule 30 of the Federal Rules of Criminal Procedure establishes that "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." Fed. R. Crim. P. 30.

upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." Id.

In this case, the evidence at trial established that Baltas joined the conspiracy on his own accord. Alvis merely presented the Massachusetts Diablos with a plan to alleviate their strangling financial situation. Alvis may have been well regarded by his fellow Diablos and loyalty to the Club may have been strong among its members. Yet, the existence of these circumstances, without a plea predicated upon them, is legally not enough to constitute improper inducement. See United States v. Young, 78 F.3d 758, 761 (1st Cir. 1996) (rejecting "the proposition that friendship, without a plea predicated upon friendship, suffices legally as inducement"). Contrary to his claim, the record shows that it was Baltas — who quickly seized on Alvis's idea — and who played upon the Diablos's commitment to the Club to promote participation in the plan, by stating: "Well, you know what? This is an outlaw motorcycle club. It's not a 50/50 club, it's not a 70/70 club. . . . [Y]ou got to take your shot." Absent improper inducement, the district court was not obliged to instruct the jury on entrapment, and thus our inquiry should end here. Nevertheless, we note that Baltas also failed to show at trial that he lacked the requisite predisposition. Therefore, because we conclude that Baltas was not entitled to have the jury consider his defense of entrapment, we affirm the district court's decision.

-20-

## E. Sentencing

### 1. Acceptance of Responsibility

Baltas claims that the district court erroneously declined to reduce his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a). A defendant qualifies for this adjustment when he "clearly demonstrates acceptance of responsibility for his offense." Id. It is incumbent upon the defendant to prove entitlement to a decrease in the offense level. See United States v. Rosario-Peralta, 199 F.3d 552, 570 (1st Cir. 1999). We will not reverse a district court's decision to withhold a reduction in the offense level unless clearly erroneous. See id.

Although a defendant does not necessarily forfeit the possibility of obtaining a reduction for acceptance of responsibility by going to trial, doing so "greatly diminishe[s] his chances of receiving [such an] adjustment." Id. Only in "rare situations" a defendant who elects to exercise his constitutional right to a trial will qualify for a decrease in his offense level for acceptance of responsibility.[5] As explained in Note 2 of the Comment to § 3E1.1:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is

---

[5]We note that although "[t]he guideline admittedly imposes a tough choice on a defendant . . ., it is not unconstitutional . . . ." See United States v. DeLeón Ruiz, 47 F.3d 452, 456 (1st Cir. 1995) (citations omitted); see also United States v. Rosario-Peralta, 199 F.3d 552, 570-71 (1st Cir. 1999).

convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1 cmt. note 2.

In the case at bar, the district court correctly determined that Baltas was not entitled to an offense level reduction pursuant to § 3E1.1. First, the record is barren of any pretrial statements or conduct indicating that Baltas accepted responsibility. Second, his situation does not fit any of the examples presented in the guideline commentary, and it is by no means "rare." He asserts nonetheless that he did not proceed to trial to contest factual guilt, but to "to test the strength of the government's case . . . ."[6] In this

---

[6]Baltas also contends that "[t]o the extent that he also wanted to argue entrapment, he was not thereby failing to take responsibility for his actions." Some circuits have held that a defendant's going to trial to allege entrapment does not preclude a reduction for acceptance of responsibility, see, e.g., United States v. Fleener, 900 F.2d 914, 918 (6th Cir. 1990), while others have held that the defense of entrapment and U.S.S.G. § 3E1.1 are incompatible, see, e.g., United States v. Kirkland, 104 F.3d 1403, 1405 (D.C. Cir. 1997). Today, we have no need to decide the issue because the record belies any claim that Baltas "clearly demonstrate[d] acceptance of responsibility for
(continued...)

-22-

view, he suggests that the trial court's dismissal of the RICO counts, and the jury's not-guilty verdicts as to the firearms counts tilt the balance in his favor. This argument is unavailing; Baltas could have pleaded to the drug count and still gone to trial on the remaining ones. See United States v. DeLeón Ruiz, 47 F.3d 452, 455 (1st Cir. 1995) ("[A]bsent unusual facts, we will . . . generally sustain a district court that denies acceptance of responsibility to a defendant who declined to plead guilty on the count or counts of which he was convicted."). Moreover, from the beginning of the case, Baltas contested his guilt.[7] As his counsel stated in opening:

> Now, I told you, before Mr. Baltas comes into this courtroom he's presumed innocent. As soon as the first time that he was brought before a court and said you've been indicted, how do you plead, and he pleaded not guilty, he join[ed] that issue for trial.

At the sentencing hearing, the district court, in refusing to adjust Baltas's offense level for acceptance of responsibility, expressed:

> As I understand it, I think Mr. Baltas takes the position, which I don't blame him for if that's his position, that he never participated in any kind of a heroin conspiracy; that he never assisted the group of people to carry out that conspiracy; that he never had

---

[6](...continued)
his offense." U.S.S.G. § 3E1.1.

[7]Even his statements before this court confirms this. For example, in his supplemental brief, Baltas asserts that he has "consistently maintained that he is innocent[, and] that [h]e never conceded that he was part of any conspiracy to possess heroin."

-23-

any intent to associate with them, and so on, and that just strikes me as not acceptance of responsibility. I'm not saying he ought to, but what I am saying is given his position, I have a very hard time understanding how that equals acceptance of responsibility.

Baltas also makes reference to his allocution, where he told the trial judge: "[l]ike I said, I can accept my responsibility for what I did." When viewed in proper context, this statement loses almost all significance. In berating the government for conducting the heroin sting operation, Baltas declared:

> I made up my mind several years ago that I was done with being a wiseguy. It didn't work out apparently because this guy [Alvis] got me tied up. I purposefully — I want to do this with a little respect. I want to thank you for what you did with my son, Shane. I want to thank you for what you did with me with the bail hearings, for my family, my kids. But it's tough for me to want to say I'm sorry because I'm not.
>
> What I've done all my life I've paid for, I was man enough to stand up and say, okay, I did it. Let me go do my time. This I didn't do, and I'm going to jail for it.[8]

These are hardly words of contrition. Therefore, we conclude that the district court's determination not to reduce Baltas's offense level for acceptance of responsibility was not clearly erroneous, and thus affirm it.

## 2. Role in the Offense

---

[8]Moreover, in his objections to the presentence report, Baltas maintained "that he never agreed to participate in the Government sham transaction plan nor did he need to approve of it or assist in recruiting persons to carry it out."

Baltas further assigns error to the district court's refusal to decrease his offense level as a minor participant under U.S.S.G. § 3B1.2(b). Like a denial of a reduction for acceptance of responsibility, a district court's refusal to adjust a defendant's offense level due to his minor participation is reviewed for clear error. See Rosario-Peralta, 199 F.3d at 571. However, because Baltas never raised the issue below, "he must show that the district court's failure to adjust his sentence downward was 'plain error.'" See United States v. Daniel, 962 F.2d 100, 102-03 (1st Cir. 1992).

"[A]ny participant who is less culpable than most other participants, but whose role could not be described as minimal," is considered a minor participant under the Guidelines. U.S.S.G. § 3B1.2(b) cmt. note 3. To be entitled to a sentence adjustment for minor participation, a defendant must shoulder the burden of proving "both that he is less culpable than most others involved in the offense of conviction and less culpable than most other miscreants convicted of similar crimes." United States v. Ortiz-Santiago, 211 F.3d 146, 149 (1st Cir. 2000). This determination "is heavily dependent upon the facts of a particular case." U.S.S.G. § 3B1.2(b) (backg'd); see also United States v. Mangos, 134 F.3d 460, 466 (1st Cir. 1998) ("role-in-the-offense determinations are fact-bound"). Moreover, "[w]e have declared, with a regularity bordering on the echolalic, that barring a mistake of law . . ., 'battles over a defendant's status . . . will

-25-

almost always be won or lost in the district court.'" United States v. Conley, 156 F.3d 78, 85 (1st Cir. 1998). Baltas did not fight his battle in the district court, and he stands no better chance of victory in this one.

The record sufficiently demonstrates that Baltas was "a player rather than a . . . dabbler," Ortiz-Santiago, 211 F.3d at 149; he (1) participated in the initial planning of the heroin-trafficking conspiracy, (2) knew the scope of the activity, and (3) took the initiative of recruiting two Club members to provide security for the transaction. Under these circumstances, the district court's failure to adjust Baltas's offense level for minor participation was no error, plain or otherwise.

### C. Downward Departure

Baltas argues that the district court erred in refusing to depart downward on two grounds. First, he contends that the district court should have departed downward pursuant to U.S.S.G. § 4A1.3, because his criminal history category over-represented the seriousness of his criminal history. Specifically, Baltas complains that three of the five points which led to his criminal history III category resulted from a prior sentence which barely qualified as a such under §§ 4A1.1(a) and 4A1.2(e).

Guideline § 4A1.1(a) mandates a 3-point addition to a defendant's criminal history computation "for each prior sentence of

imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). Under this section, "[a] sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period." Id. cmt. note 1; see also id. § 4A1.2(e).

In the case at bar, Baltas objected to the 3-point computation under § 4A1.1(a) because the prior sentence in question was imposed more than 15 years before his offense of conviction. However, the district court overruled this objection because it found that Baltas was in prison within the guideline's 15-year period. Because Baltas does not claim that the district court committed legal error in making this determination — and indeed he could not — we lack jurisdiction to review his claim. See Collazo-Aponte, 216 F.3d at 204 ("the defendant may not appeal from a sentence within the guideline range if there was no legal error and the only claim is that the district court acted unreasonably in declining to depart") (quoting United States v. Saldaña, 109 F.3d 100, 102 (1st Cir. 1997)); see also United States v. Tucker, 892 F.2d 8, 10 (1st Cir. 1989).

Second, Baltas alleges that the district court should have departed downward under U.S.S.G. § 5K2.0. In essence, Baltas's contention is that the fact that his conviction stemmed from the government's reverse sting operation takes his case outside the "heartland" of typical cases contemplated by the Guidelines. The

district court did not deny Baltas's request because it thought it lacked the authority to depart, but because it declined to exercise its discretion to do so. Its decision, therefore, is not subject to review by this court. See Portela, 167 F.3d at 708.

## D. *Apprendi*

After oral argument was held, a letter was transmitted to the court under Fed. R. App. P. 28(j) calling our attention to the recent Supreme Court decision in Apprendi v. New Jersey, — U.S. — (2000), 120 S. Ct. 2348 (2000). We granted both Baltas and the government time to submit supplementary memoranda addressing the possible relevance of Apprendi and, assuming that Apprendi applies, addressing the issue of prejudice. Such memoranda having been filed, the matter is properly submitted for disposition.

Invoking the rule set forth in Apprendi, where the Supreme Court held as a matter of constitutional law that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," 120 S. Ct. at 2362-63, Baltas now seeks to have his sentence vacated. Because Baltas did not raise this issue below, we review for plain error. See United States v. Mojica-Báez, 229 F.3d 292, 307 (1st Cir. 2000).

-28-

The issue presented is whether the district court's finding of drug quantity under 21 U.S.C. § 841(b)(1), which was made at the sentencing under a preponderance-of-the-evidence standard, was error under Apprendi. In support of his claim of error, Baltas argues: (1) that we should read Apprendi as applying where any fact (other than the fact of a prior conviction) exposes the defendant to an increased penalty, instead of as applying only in situations where the prescribed sentence exceeds the statutory maximum, and that (2) assuming Apprendi is applicable, the district court's finding constitutes plain error.

Baltas was convicted of conspiracy to possess with intention to distribute and to distribute heroin, in violation of 21 U.S.C. § 846. The amount of heroin attributed to him was neither submitted to the jury, nor found by the jury beyond a reasonable doubt. Instead, it was determined by the district court at the sentencing hearing under a preponderance of the evidence standard. Under this standard, the district court determined that the transaction involved at least one kilogram of heroin. This finding mandated a base offense level of 34. With a criminal history category of III, Baltas's Guideline range was of 188 to 235 months' imprisonment, which as we explain below is within the statutory maximum.

Under the pertinent statutory scheme, Section 846 provides that the penalty for an attempt or conspiracy to commit a drug trafficking offense shall be the same as the penalty for the offense that was the object of the attempt or conspiracy. 21 U.S.C. § 846. The underlying offense is set out in section 841(a)(1), which makes it unlawful to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Section 841(b), in turn, establishes the penalties applicable to a violation of section 841(a)(1). Section 841(b)(1)(C) authorizes a term of imprisonment for a schedule I narcotic, such as heroin, without reference to drug quantity, of "not more than 20 years." 21 U.S.C. § 841(b)(1)(C). Using this framework, the district court sentenced Baltas to a term of 188 months of imprisonment.

Notwithstanding his sentence at the low end of the penalty range, Baltas argues that <u>Apprendi</u> must not be construed so narrowly; and should apply in situations where any fact (other than the fact of a prior conviction) exposes the defendant to an increased penalty, instead of as applying only in situations where the prescribed sentence exceeds the statutory maximum. However, as held by the Eighth Circuit, "[t]his argument goes too far, and is not supported by the

-30-

Supreme Court's opinion in Apprendi." United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir. 2000). The rule in Apprendi only applies in situations where the judge-made factual determination increases the maximum sentence beyond the statutory maximum, and not in situations where the Defendant's potential exposure is increased within the statutory range. Id. Therefore, if the judge-made factual determination merely narrows the judge's discretion within the range already authorized by the offense of conviction, then no Apprendi violation occurs. Id. at 934-35.

Based on the Supreme Court's decision in Apprendi, we hold that no constitutional error occurs when the district court sentences the defendant within the statutory maximum, regardless that drug quantity was never determined by the jury beyond a reasonable doubt. Therefore, Baltas's sentence of 188 months, below the twenty year maximum provided by 21 U.S.C. § 841(b)(1)(C), does not constitute an error under Apprendi. This decision is consistent with those of our sister circuits which have had the opportunity to address challenges similar to the one presented by Baltas. See, e.g., United States v. Meshack, 225 F.3d 556, 576 (5th Cir. 2000); Aguayo-Delgado, 220 F.3d at 933; United States v. Gerrow, 2000 WL 1675594, at *2 (11th Cir. Nov. 8, 2000); United States v. Angle, 230 F.3d 113, 123 (4th

Cir. 2000); <u>United States</u> v. <u>Chavez</u>, 230 F.3d 1089, 1091 (8th Cir. 2000).

Baltas goes on to explain in his brief, that assuming an <u>Apprendi</u> violation occurred below, the error was plain. However, since we find no error in the district court's sentencing, plain or otherwise, we need not go any further.

### III. CONCLUSION

For the foregoing reasons, we affirm the conviction and sentence.