Not for Publication in West's Federal Reporter
Citation Limited Pursuant to 1st Cir. Loc. R. 32.3

# United States Court of Appeals
## For the First Circuit

———————————————

No. 02-1165

UNITED STATES OF AMERICA,
Appellee,

v.

CHRISTOPHER BULLOCK,
Defendant, Appellant.

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

———————————————

Before

Boudin, Chief Judge,
Farris,* Senior Circuit Judge,
and Torruella, Circuit Judges.

———————————————

Donald R. Furman, Jr., Furman Law Firm, for Appellant.
Mark E. Howard, Assistant United State Attorney, with whom
Thomas P. Colantuono, United States Attorney, was on brief, for
Appellee.

———————————————

December 20, 2002

———————————————

*/Of the Ninth Circuit, sitting by designation.

**Per Curiam**.  Christopher Bullock appeals the judgment and 160-month sentence imposed following his jury trial conviction for conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base ("crack"), in violation of 21 U.S.C. § 846.  He contends the district court erred in (1) denying his motion to dismiss based on insufficient evidence; (2) admitting coconspirator statements which were inadmissible hearsay; and (3) determining the drug quantity for sentencing purposes.  We affirm the conviction and sentence.

At Bullock's jury trial, two coconspirators, Dana Towsley and Carlos "Blacks" Richards, and multiple investigating police officers, including undercover Detective Brian Phelps, testified for the government against Bullock.  Towsley, who had already pleaded guilty to crack distribution charges in this matter, testified that during the spring and summer of 2001, he lived in Bullock's apartment and worked for him by "running crack."  Towsley explained that Bullock permitted him to live in his apartment without paying rent and, in exchange, Towsley would deliver crack to Bullock's customers.  Towsley further testified that he made five or six trips to New York City to obtain crack for Bullock.  While Towsley admitted that he sometimes sold his own crack independently, he also testified that Bullock supplied him with crack on occasion and that on April 30, 2001, the crack Towsley sold to undercover Detective Phelps belonged to Bullock.

Richards, who had also already pleaded guilty to crack distribution charges in this matter, testified that he assisted Bullock in selling crack by helping him package and deliver it. Richards also admitted to selling and packaging his own crack independently and that the crack he sold to Detective Phelps on August 8, 2001, was his own, but that Bullock provided the transportation, namely his vehicle, for that delivery.

Investigating police officers testified that on April 19, 2001, after Towsley told Detective Phelps he could obtain crack later that day by walking to get it, they observed Towsley and Richards walk into Bullock's apartment shortly before returning to Phelps with crack for sale. Detective Phelps further testified that on April 24, 2001, Bullock's apartment telephone was utilized by Richards and Towsley for a crack sale. Phelps also testified that Bullock was actually present at two crack sales which took place on April 30 and August 8, 2001.

Bullock first contends that the evidence was insufficient to convict him of violating 21 U.S.C. § 846, and that the trial court should have granted his motion for judgment of acquittal. We review this claim de novo, see United States v. Hernandez, 146 F.3d 30, 32 (1st Cir. 1998), unitarily applying the familiar sufficiency of the evidence standard, see United States v. Hernandez, 218 F.3d 58, 64 n.4 (1st Cir. 2000) (noting that challenges to the

-3-

sufficiency of the evidence and to the denial of a motion for judgment of acquittal raise a single issue).

Under this standard, the court reviews all the evidence, direct and circumstantial, in the light most favorable to the prosecution, drawing all reasonable inferences consistent with the verdict, and avoiding credibility judgments, to determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt. See United States v. Baltas, 236 F.3d 27, 35 (1st Cir.), cert. denied, 532 U.S. 1030 (2001). It is immaterial that a possible rendition of the record could support a not guilty verdict; it is enough that a rational trier of fact could have construed the evidence to find guilt beyond a reasonable doubt. See id.

Bullock argues that the evidence presented at trial merely establishes independent and joint venture sales of crack by coconspirators Towsley and Richards, sales which "neither involved nor were dependent[] on Mr. Bullock." According to Bullock, the evidence failed to establish that he intended to agree and to commit the conspiracy with Towsley and Richards for which he was convicted.

To prove a drug conspiracy under 21 U.S.C. § 846, the government must show that a conspiracy existed and that a particular defendant agreed to participate in it, with the intent to commit the underlying substantive offense. See Baltas, 236 F.3d

-4-

at 35. It is necessary to show both intent to agree and intent to commit the substantive offense. See id. at 35-36. However, the government need not show that a given defendant took part in all aspects of the conspiracy. See id. at 36. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense. See Salinas v. United States, 522 U.S. 52, 65 (1997).

The record reflects that evidence established not only the existence of a drug conspiracy, but one in which Bullock clearly agreed to participate with the intent to distribute crack. Proof of Bullock's direct participation in every drug sale made by his coconspirators is not required to convict him for drug conspiracy. See id.; United States v. Marrero-Ortiz, 160 F.3d 768, 773 (1st Cir. 1998).

Bullock next contends that certain coconspirator statements should not have been admitted at trial. Under an exception to the hearsay rule, an out-of-court statement made "by a coconspirator of a party during the course and in furtherance of the conspiracy," may be offered into evidence against that party. Fed. R. Evid. 801(d)(2)(E). To invoke this exception, the government "bears the burden of establishing, by a preponderance of the evidence, that a conspiracy embracing both the declarant and the defendant existed, and that the declarant uttered the statement during and in furtherance of the conspiracy." United States v.

Bradshaw, 281 F.3d 278, 283 (1st Cir. 2002) (internal marks omitted). Because coconspirator statements are not deemed self-elucidating, the government must introduce extrinsic evidence sufficient to delineate the conspiracy and corroborate the roles of the declarant and the defendant. See United States v. Sepulveda, 15 F.3d 1161, 1181-82 (1st Cir. 1993).

Here, the government introduced sufficient extrinsic evidence to demonstrate, by a preponderance of the evidence, the existence of a conspiracy, and the respective roles of Towsley, Richards, and Bullock. See id. at 1180. Detective Phelps and other police officers corroborated Towsley and Richards' testimony by linking four separate crack sales to Bullock, Bullock's vehicle, or Bullock's apartment. We reject Bullock's claim that the government failed to satisfy its foundational requirement for admitting the hearsay statements of Bullock's coconspirators.

Bullock contends that at sentencing the district court inappropriately included all the drug sales Towsley and Richards made to Detective Phelps, despite evidence that Bullock was not involved in most of them. We review a sentencing court's findings of fact concerning drug quantity for clear error. See United States v. Caba, 241 F.3d 98, 102 (1st Cir. 2001).

The district court calculated the applicable drug quantity to be between twenty and thirty-five grams of crack, yielding a base offense level of twenty-eight. The court based its

"very conservative figure" on four undercover sales to Phelps linked to Bullock (the April 19, April 24, April 30, and August 8, 2001 transactions), and the crack Towsley obtained for Bullock on multiple trips to New York City. Bullock was present at two of the sales and provided use of his apartment and telephone for two other sales, for a total sale to Detective Phelps of 13.77 grams of crack. Also, Towsley obtained approximately half an ounce, or 14 grams, of crack for Bullock on each of his five or six trips to New York City. The district court did not err in making its sentencing calculations.

**Affirmed**.