BESOSA, District Judge.
Defendant José Fernández-Sanes ("Fernández") requests that his trial be severed from defendant Boanerges Herrera-Cruz's ("Herrera") trial pursuant to Federal Rule of Criminal Procedure 14 (" Rule 14"). (Docket No. 63.) For the reasons set forth below, Fernández's motion for severance is DENIED.
I. Background
On March 22, 2017, a grand jury returned a two-count indictment charging Fernández and Herrera with conspiring to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (count one), and possessing with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (count two). (Docket No. 13.) Drug Enforcement Administration ("DEA") special agent Danielle Stark ("Stark") prepared an affidavit in support of the criminal complaint. (Docket No. 1, Ex. 1.) The following allegations derive from special agent Stark's affidavit. Id.
On March 14, 2017, a confidential informant notified the DEA that individuals aboard a Mako vessel intended to recover narcotics at Palomino Island, Puerto Rico. Id. at p. 1. The DEA relayed this information to the Puerto Rico Rapid Action Strike Force ("FURA"). Id. FURA officers arrived at Palomino Island, and observed Fernández aboard a vessel matching the description provided by the confidential informant. Id. FURA officers also observed Herrera along a tree line on Palomino Island, and saw him run toward the vessel occupied by Fernández. Id. The defendants fled the area on the vessel at a rapid speed. Id. FURA officers intercepted *530 the vessel, and escorted the vessel, Fernández and Herrera to Puerto Chico, the FURA harbor. Id.
Fernández and Herrera consented to a search of the vessel. Id. at p. 2. No narcotics were located. Id. Subsequently, FURA officers returned to Palomino Island with a canine unit. Id. The canine alerted on two black bags located near the area where FURA officers previously observed Herrera. Id. The black bags contained 18 brick-shaped objects wrapped in green cellophane. Id. The bricks weighed approximately 20 kilograms, and tested positive for cocaine. Id.
Law enforcement officers arrested Fernández and Herrera. Id. Fernández denied all knowledge of the black bags. Id. According to Fernández, his imitation Rolex watch had fallen overboard off Palomino Island the day prior to his arrest. Id. Fernández and Herrera allegedly returned to Palomino Island to search for the lost watch, but were unable to find it because the water was too muddy. Id. Herrera stated, however, that Fernández and an unknown male drove him to the pier that morning to pick-up cocaine at Palomino Island. Id.
Both defendants are set to stand trial on September 17, 2018. Fernández moves to sever the joint trial, asserting that the admission of Herrera's post-arrest statements at trial would violate the Confrontation Clause of the Sixth Amendment of the United States Constitution. (Docket No. 63.) The Court disagrees.
II. Severance Standard
"As a rule, persons who are indicted together should be tried together." United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993). Joint trials prevent inconsistent verdicts and conserve judicial resources. Id. Federal Rule of Criminal Procedure 14 provides, however, that courts may sever joint trials "[i]f the joinder of offenses or defendants in an indictment [...] appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). Severance is appropriate only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 638, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) ; see United States v. Peña-Lora, 225 F.3d 17, 33 (1st Cir. 2000) ("[S]everance is especially disfavored in conspiracy cases") (citation omitted). District courts possess "considerable latitude" regarding severance motions, and "will be overturned only if that wide discretion is plainly abused." O'Bryant, 998 F.2d at 25 (citation omitted).
A. Confrontation Clause
Fernández predicates his motion to sever on the Confrontation Clause, the constitutional guarantee that a criminal defendant shall "be confronted with the witnesses against him." Docket No. 63; citing U.S. CONT. amend. VI. Confrontation implies the right to conduct a cross-examination of the testifying witness. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Out-of-court statements are admissible against criminal defendants in very limited circumstances. See Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). At a joint trial of more than one defendant, the government cannot elicit "out-of-court statements of a non-testifying defendant, even if admissible against the declarant, [...] against a jointly tried codefendant unless otherwise independently admissible against the codefendant." Lily v. Virginia, 527 U.S. 116, 124, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999).
*531 The Court relies on Supreme Court precedent to determine whether the admission of Herrera's confession at trial contravenes Fernández's Sixth Amendment rights.[1] See Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) ; Richardson v. Marsh, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) ; Gray v. Maryland, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). In Bruton, the petitioner's codefendant named petitioner as an accomplice in an armed robbery. 391 U.S. at 123, 88 S.Ct. 1620. The Supreme Court overturned the petitioner's conviction, holding that certain "powerfully incriminating extrajudicial statements of a codefendant" created the intolerable risk that the jury would convict the petitioner based on his non-testifying codefendant's confession. Id. [2] Pursuant to Bruton, a non-testifying codefendant's confession incriminating another codefendant is inadmissible at a joint trial. Id.
Contrary to the "facially incriminating confession" in Bruton, Richardson concerned a redacted confession that eliminated all reference to the petitioner. 481 U.S. at 211, 107 S.Ct. 1702. The Supreme Court held that the redacted confession, in conjunction with a limiting instruction to the jury, did not violate the Confrontation Clause. Id. Statements that are incriminating are admissible, "only when linked with evidence introduced later at trial," because "the judge's instruction may well be successful in dissuading the jury from entering onto the path of [impermissible] inference in the first place, so that there is no incrimination to forget." Id. at 208, 107 S.Ct. 1702 ; see United States v. Molina, 407 F.3d 511, 521 (1st Cir. 2005) (holding that substituting the defendant's name with neutral pronouns "was not so powerfully incriminating as to bring the Bruton proscription to bear").
Gray also concerned redactions to a codefendant's confession at a joint trial. 523 U.S. at 192, 118 S.Ct. 1151. The United States substituted the petitioner's name with the word "deleted" throughout his codefendant's confession. 523 U.S. at 192, 118 S.Ct. 1151. The Supreme Court held that the word " 'deleted' or a symbol or other similarly obvious indications of alteration ... so closely resembles Bruton 's unredacted statements that, in our view, the law must require the same result." 523 U.S. at 192, 195, 118 S.Ct. 1151 (noting that unlike the word "deleted," the redacted confession in Richardson"differs from directly accusatory evidence in this respect, for it does not point directly to the defendant at all").
Ultimately, the Court must analyze the adequacy of the United States' proposed redactions "on a case-by-case basis, paying careful attention to both a statement's text and context in which it is offered." Foxworth v. St. Amand, 570 F.3d 414, 433 (1st Cir. 2009) (holding that replacing the defendant's name with "Mr. X," referring to the confession as the "redacted statement," and admitting testimony that "Mr. X" represented the name of another person violated the Sixth Amendment); see *532 United States v. Hilario-Hilario, 376 F.Supp.2d 141, 146 (D.P.R. 2005) (García, J.) (denying motion to sever because the "proper remedy in this situation is simply to redact the non-testifying defendant's statements in order to remove any reference, direct or indirect, to his co-defendants").
III. Discussion
Fernández sets forth two arguments in support of his motion to sever. (Docket No. 63.) First, Fernández contends that Herrera's confession "cannot be constitutionally redacted." Id. at p. 4. Second, Fernández maintains that because only two individuals were arrested and indicted, the jury will necessarily conclude that the redacted confession refers to Fernández. Id. The United States responded, and the Fernández replied. (Docket Nos. 82 and 86.) With leave of the Court, the United States filed a surreply. (Docket No. 91.)
A. Herrera's Confession
The United States submitted proposed redactions of Herrera's confession. Below are the proposed redactions that the United States intends to elicit at trial.
• HERRERA-Cruz stated that yesterday AKA "VIEQUES" was at Palomino Island with other individuals hanging out at that location. HERRERA-Cruz stated that he had known AKA "VIEQUES" for about four months.
• HERRERA-Cruz informed that [SOMEONE] contacted him yesterday (3/13/17) in the afternoon, and he agreed to go to Palomino Island beach.
• HERRERA-Cruz stated that the vessel belonged to a friend that he takes care of the vessel. HERRERA-Cruz stated that early in the morning of March 14, 2017, he went to Sea Lover Pier, Fajardo PR. HERRERA-Cruz stated that he departed from that pier in route to Palomino Island.
• HERRERA-Cruz informed that once arrived to the coast of Palomino Island, he jumped into the water to look for the watch Rolex at the location. HERRERA-Cruz stated that once at the coast of Palomino went to relive himself at the woods and returned to the vessel.[3]
• HERRERA-Cruz stated that he didn't find the watch and he jumped back to the vessel and prepared to return back to Fajardo, but was then intercepted by Puerto Rico Police Department ("PRPD") FURA vessel.
• HERRERA-Cruz informed Agents that in the morning, other individuals contacted him. HERRERA-Cruz stated that [SOMEONE] told him to pick up the backpacks at Palomino. [SOMEONE] would pay HERRERA-Cruz for picking the backpacks.
*533 • HERRERA-Cruz said that was his first time doing that kind of job. HERRERA-Cruz stated that [SOMEONE] asked him to (HERRERA-Cruz) to find the vessel for the trip.
• HERRERA-Cruz said that [SOMEONE] picked him up with another, unknown male, described as a Hispanic male, dark skin, overweight, driving a Toyota Rav4, 2002 charcoal grey. The unknown male dropped HERRERA-Cruz off at Sea Lover's Pier.
• HERRERA-Cruz said [HE] departed from Sea Lover's Pier in Fajardo at approximately 7:20 a.m.
• HERRERA-Cruz said that [SOMEONE] told him to look for some kilograms of cocaine at Palomino. HERRERA-Cruz stated that he couldn't find the bags, and then be observed the FURA vessel approaching them.[4]
• HERRERA-Cruz stated that he didn't know how much money he would receive.
• HERRERA-Cruz stated that while at Palomino, he observed a yellow and green "YOLA" style vessel occupied by two people.
(Docket No. 91 at pp. 3-6.) The United States eliminated all reference to Fernández by name, inserting the neutral pronoun "someone" and substituting plural pronouns with singular pronouns. Id.
B. The Redaction of Herrera's Confession Complies with Bruton and Its Progeny
Fernández argues that he and Herrera must stand trial separately because "a majority of the statements redaction [sic ] cannot eliminate all reference to Mr. Fernández's existence." (Docket No. 86 at p. 3.) The United States edited Herrera's statements thoroughly, eliminating not only Fernández's name but also textual indicators, such as plural pronouns and reference to Fernández's imitation Rolex watch. (Docket No. 91 at pp. 3-6.) The redactions are subtle, not the mechanical insertion of the word "deleted" or "Mr. X" that the Supreme Court and First Circuit Court of Appeals found constitutionally deficient in Gray and Foxworth, respectively. 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 ; 570 F.3d 414. Because Herrera's redacted statements are not "facially incriminating," the admission of Herrera's confession at trial in redacted form comports with the Sixth Amendment. Accordingly, severance is unwarranted.
C. Herrera's Redacted Post-Arrest Statements do not Implicate Fernández
Fernández argues that notwithstanding the redactions to Herrera's confession, "the only person Mr. Herrera could be referring to is Mr. Fernández." (Docket No. 86 at p. 4.) In Molina, the United States redacted the confessing codefendant's statement, substituting the petitioners' name with "other individuals" and "another individual." 407 F.3d at 520. The First Circuit Court of Appeals rejected the petitioners' Sixth Amendment argument, holding that "Agent López's testimony failed to convey a compelling inference that the 'other individuals' to whom [the confessing codefendant] referred to were *534 [the second codefendant] and [the third codefendant]." Id. The Molina court, however, postulated in dicta that "[a] different case may involve so few defendants that the statement leaves little doubt in the listener's mind about the identity of 'another person.' " 407 F.3d at 520 ; citing United States v. Vejar-Urías, 165 F.3d 337, 340 (5th Cir. 1999). Indeed, Fernández invokes the Molina court's reliance on Vejar-Urias in support of his motion for severance. (Docket No. 86 at p. 5.) The Fifth Circuit Court of Appeals' decision in Vejar-Urias, however, is distinguishable.
In Vejar-Urías, a United States Customs Inspector arrested Manuela Vejar-Urías ("Vejar") and her sister, Benita Torres ("Torres"), for possessing with intent to distribute marijuana. 165 F.3d at 338. Torres asserted to law enforcement officers that she was "told by [Vejar] to lie about the story about going to get the vehicle fixed," and made other post-arrest statements that implicated Vejar. Id. The United States redacted Torres's statements, substituting the word "someone" for Vejar's name, but elicited at trial testimony that Torres was "hesitant to put her responses in writing, because 'she didn't want her sister, Defendant Vejar, to know what she was saying about her." Id. The district court did not provide a Bruton instruction. Id. The Fifth Circuit Court of Appeals overturned Vejar's conviction, reasoning that when:
it is obvious from consideration of the confession as a whole that the redacted term was a reference to the defendant, then admission of a codefendant's confession that also inculpates the defendant does violate Bruton, regardless of whether the redaction was accomplished by the use of a neutral pronoun or otherwise.
Id. at 339. Despite the insertion of "someone" in Torres's statement, the jury had no reason to doubt that "Torres 'did not want her sister Vejar to know what she was saying about her." Id. (emphasis added).
The redacted statements set forth in Herrera's confession render Vejar inapposite. Significantly, the United States deleted sentences similar to the statements that the Fifth Circuit Court of Appeal found objectionable in Vejar. (Docket No. 91 at p. 5.) The United States deleted the following statements from Herrera's confession.
• HERRERA-Cruz stated that FERNANDEZ-Sanes made up the story that he lost his watch at Palomino and went [sic ] they were in route to retrieve it.
• HERRERA-Cruz said that during transport from Palomino to FURA headquarters, FERNANDEZ-Sanes told him not to say anything to the police.
Id. Fernández argues that these statements "still 'point[ ] directly' to Mr. Fernández." (Docket No. 86 at p. 4.) The United States, however, deleted these statements from Herrera's statement. The remaining statements do not implicate Fernández to the extent that severance is appropriate. The United States notes that the conspiracy with which the defendants are charged purportedly involved other individuals not named in the indictment. Herrera's redacted confession neither states nor implies that the "someone" to whom Herrera refers is Fernández. The jury may speculate that Herrera refers to Fernández, but only by linking other evidence at trial with Herrera's confession. See United States v. Figueroa-Cartagena, 612 F.3d 69, 85 (1st Cir. 2010) ("By contrast, statements that incriminate a co-defendant 'only when linked with evidence introduced later at trial' can be admitted if references to the co-defendant are redacted and the jury is instructed not to consider *535 the statement against any defendant other than the declarant.") (citing Richardson, 481 U.S. at 208, 107 S.Ct. 1702 ).
The Second Circuit Court of Appeals' decision in United States v. Jass is illustrative. 569 F.3d 47 (2nd Cir. 2009). Marian Jass ("Jass") and Kenneth Leight ("Leight") were charged with violating the Mann Act. Id. The United States redacted statements made by Leight that implicated Jass. Id. at 52. For instance, the testifying police officer stated that "Mr. Leight told me that he and another person had taken [Victim 2] to the Rockaway Mall in New Jersey." Id. The district court provided the jury with a Bruton instruction. Id. Jass argued that the admission of Leight's statement violated the Confrontation Clause, because "(1) only two adults were involved in the charged crime and only two adults (Jass and Leight) were on trial, and (2) Leight's reference to attempted sexual intercourse with 'another person' clearly signaled to the jury that his confederate was a woman." Id. at 62. The Second Circuit Court of Appeals rejected Jass' Sixth Amendment argument, holding that "a jury would have had to refer to other trial evidence to link Jass to the redacted statement." Id. at 59-60 (holding that Bruton, Richardson and Marsh"do not construe the Confrontation Clause to demand further that a confession be redacted so as to permit no incriminating inference against the non-declarant defendant"). The Court finds the rationale articulated by the Second Circuit Court of Appeals in Jass persuasive. Accordingly, the Court denies Fernández's motion for severance. The Court will instruct the jury to consider Herrera's statement only as evidence against Herrera.
III. Conclusion
For the reasons set forth above, Fernández's motion for severance is DENIED . Trial remains set for September 17, 2018 at 9:00 a.m.
IT IS SO ORDERED.

Herrera's post-arrest statements to law enforcement officers are admissible against Herrera. Fed. R. Evid. 801(d)(2) (a statement is not hearsay when "the statement is offered against an opposing party").

The Advisory Committee Note for Rule 14 refers to the same Confrontation Clause issue encountered in Bruton: "A defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice." See 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The Court orders the United States to redact the following phrase from Herrera's statement: "to look for the watch Rolex at the location." In a previous section of Herrera's confession, the United States deleted a sentence indicating that Herrera "agreed to help him to find the Rolex of FERNÁNDEZ-Sanes." (Docket No 91 at p. 3.) Fernández stated to law enforcement officers that he lost his imitation Rolex watch at Palomino Island. (Docket No. 82, Ex. 2 at p. 2.) The redactions must be consistent and minimize reference to Fernández. The Court modifies only the substance, not the grammar of the United States' proposed redactions. Accordingly, the United States may elicit at trial the following statement: HERRERA-Cruz informed that once arrived to the coast of Palomino Island, he jumped into the water. HERRERA-Cruz stated that once at the coast of Palomino went to relieve himself at the woods and returned to the vessel.

The Court orders the United States to substitute "him" for "them" to reflect that the statement refers only to Herrera. The United States may elicit the following statement: HERRERA-Cruz said that [SOMEONE] told him to look for some kilograms of cocaine at Palomino. HERRERA-Cruz stated that he couldn't find the bags, and then be observed the FURA vessel approaching [HIM].