# United States Court of Appeals
## For the First Circuit

No. 22-1950

UNITED STATES,

Appellee,

v.

JOSE PADILLA-GALARZA, a/k/a "Joey",

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Silvia L. Carreño-Coll, U.S. District Judge]

Before

Aframe, Hamilton,[*] and Thompson,
Circuit Judges.

Rafael F. Castro Lang for appellant.

Ann O'Connell Adams, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, Ricardo A. Imbert-Fernández, Assistant United States Attorney, and Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, were on brief, for appellee.

May 6, 2026

---

[*]    Of the Seventh Circuit, sitting by designation.

**AFRAME**, <u>Circuit Judge</u>.    Following a bench trial, the district court convicted Jose Padilla-Galarza ("Padilla") of several counts related to a scheme to steal firearms from a Puerto Rico police compound.[1]  The court sentenced Padilla to twenty-five years in prison.    On appeal, Padilla argues that two of his convictions were time-barred and that several unjustified discretionary rulings prejudicially tainted the remaining convictions.    We affirm.

## I.

Padilla's convictions arose from an October 2010 robbery of a shooting range located within a Puerto Rico police compound. During the robbery, two police officers were taken hostage, and 125 firearms were stolen. On October 15, 2015, shortly before the expiration of the statute of limitations, a grand jury indicted Padilla for masterminding the robbery and committing several related crimes. The original indictment charged five counts: (1) conspiracy to commit Hobbs Act robbery; (2) brandishing and possessing a firearm in furtherance of a crime of violence; (3) stealing firearms; (4) unlicensed dealing in firearms; and

---

[1]    The counts of conviction are conspiracy to interfere with commerce by robbery, 18 U.S.C. § 1951 ("Hobbs Act conspiracy"); interference with commerce by robbery, id. ("Hobbs Act robbery"); carrying a firearm during and in relation to the Hobbs Act robbery, 18 U.S.C. §§ 924(c)(1)(A)(i), 2; stealing firearms, 18 U.S.C. §§ 924(1), 924(a)(2), 2; and being a convicted felon in possession of firearms, 18 U.S.C. § 922(g)(1).

(5) being a convicted felon in possession of a firearm. The indictment also charged three co-defendants, all of whom pleaded guilty before Padilla's trial.

Although the grand jury indicted Padilla in October 2015, he did not face trial until almost seven years later, in April 2022. The proceedings were initially delayed because of multiple changes in Padilla's representation between 2015 and 2018. A second delay occurred after the district court allowed a March 2020 motion for a continuance to an unspecified future date. During this period, Padilla filed numerous motions and discovery requests. Eventually, the court set a December 1, 2021, trial date. The last major delay, until February 2022, occurred when a new trial judge inherited the case. After Padilla obtained a few more short continuances, trial was set for April 21, 2022.

Two weeks before trial, the government filed a superseding indictment based on a change in the law. Count Two of the original indictment charged Padilla with possessing and brandishing a firearm to further a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii), and named the predicate offense as Count One, the Hobbs Act conspiracy. In 2019, United States v. Davis, 588 U.S. 445, 450-51, 470 (2019), held that Hobbs Act conspiracy could no longer serve as a predicate offense for a charge under § 924(c). As a result, the superseding indictment updated Count Two and added Count Six. Count Six charged Padilla with Hobbs Act robbery under

an aiding and abetting theory and Count Two named Count Six as the new predicate offense. The superseding indictment also changed the conduct at issue in Count Two from brandishing a firearm to carrying a firearm, which reduced the applicable mandatory minimum sentence for Count Two from seven years to five. Counts One, Three, Four, and Five remained the same.

Padilla was tried on the superseding indictment in a ten-day bench trial that began on April 21, 2022. The government claimed that Padilla masterminded the robbery while his co-defendants carried it out by impersonating police officers to gain entry to the police station. The evidence tended to show that Padilla familiarized himself with the location of the robbery over time. He also befriended one of the security guards who worked the night shift at the police station. This individual brought Padilla to the shooting range and other non-public areas, giving Padilla a sense of the layout necessary to plan the crime. The government also presented testimonial evidence from cooperating witnesses and physical evidence, such as cell phone records, showing Padilla's extensive contacts with his co-defendants during the robbery. Padilla's defense largely consisted of attempting to impeach and undermine the government's witnesses.

At the conclusion of the evidence, the district court acquitted Padilla on Count Four but convicted him on the remaining counts. Because no party asked it to do so, the court did not make

specific findings of fact in support of its verdicts.  See Fed. R. Crim. P. 23(c) ("In a case tried without a jury, the court must find the defendant guilty, or not guilty.  If a party requests before the finding of guilty or not guilty, the court must state its specific findings of fact in open court or in a written decision or opinion.").  Padilla timely appealed.

## II.

### A.    Statute of Limitations

Padilla argues that the district court wrongly denied his motion to dismiss Counts Two and Six of the superseding indictment as time-barred.  The government responds that Padilla has waived this argument and that, in any event, he is wrong on the merits. Because the argument fails on the merits, we choose to bypass the government's waiver claim.

"[A] superseding indictment which supplants a timely-filed indictment, still pending, is itself to be regarded as timely vis-a-vis a given defendant so long as it neither materially broadens nor substantially amends the charges against the defendant." United States v. O'Bryant, 998 F.2d 21, 23 (1st Cir. 1993).  The key aspect of the inquiry is whether the original indictment gave the defendant fair notice of the charged conduct for which he should prepare a defense. Id. at 24. So, the addition of a new charge in a superseding indictment after the expiration

of the statute of limitations is acceptable unless it meaningfully alters the activities alleged in the original indictment.  Id.

Here, Counts Two and Six of the superseding indictment neither broadened nor substantially amended the original indictment.  The new Count Two had only two changes.  First, it reduced the charge in the original Count Two from "brandish and possess" to "carry and use of" a firearm in furtherance of a crime of violence.  "Brandishing" a firearm requires a minimum sentence of seven years, § 924(c)(1)(A)(ii), while "carrying" a firearm requires a minimum sentence of only five years, § 924(c)(1)(A)(i).  This change is the very opposite of broadening the charge.

Second, because of the change in law worked by Davis, Count Two altered the predicate crime of violence from the Hobbs Act conspiracy charged in the original Count One to the Hobbs Act robbery charged in the new Count Six.  588 U.S. at 470.  Thus, for purposes of Padilla's statute of limitations argument, the issue is whether the substantive Hobbs Act robbery charged in the new Count Six broadened or substantially amended the charges in the original indictment.  It did not.  The new Count Six employed identical language to Count One of the original indictment to charge Padilla with:

> [U]nlawfully [taking] one hundred and twenty-five (125) firearms . . . from the POPR Shooting Range at Isla de Cabra, in the presence of duty police officers, against their will by means of actual and threatened

- 6 -

force, violence, and fear of injury, immediate and future to their person, that is, assaulting and threatening the employees with firearms in order to commit the robbery.

Thus, the original indictment fully apprised Padilla that he would be called to account for the activities charged in the new Count Six and that he should prepare a defense for that allegation. Moreover, if anything, Count Six only increased the government's burden for succeeding on the § 924(c) offense charged in Count Two. To obtain the § 924(c) conviction under the original indictment, the government would have had to prove that Padilla agreed to commit a Hobbs Act robbery. Under the superseding indictment, however, the government had to prove that he committed the substantive robbery offense.

Nothing about the superseding indictment increased the consequences for Padilla on Count Two or caused him to respond to allegations with which he was not already familiar. Accordingly, the district court correctly denied Padilla's motion to dismiss Counts Two and Six of the superseding indictment on statute-of-limitations grounds.[2]

---

[2] Padilla also argues that the addition of Count Six prejudiced him because of "its tardy filing, since it significantly affected his trial strategy." He explains that had the original indictment remained in effect, he would have moved to dismiss Count Two based on Davis at the appropriate time. Padilla claims prejudice because the superseding frustrated this strategy. The prosecution may, however, obtain a superseding indictment at any

**B.    Motions for Continuances and Requests for Funds**

We next turn to Padilla's argument that the district court abused its discretion when it denied a series of motions for continuances and requests for additional funds to obtain investigatory and expert-witness services. Because the issues are related, we discuss them together.

### 1. Motions for Continuances

On April 19, 2022, two days before trial, Padilla filed a motion for a thirty-day continuance. The motion alleged that he needed to obtain discovery in response to witness-related material disclosed by the government four days earlier. The government disclosed this material pursuant to the Jencks Act, 18 U.S.C. § 3500, which requires the prosecution to produce prior statements made by a witness. The following day, Padilla filed a supplemental motion where he explained that he also needed additional time to retain an expert to interpret cell phone location data that the

---

time prior to trial so long as it does not do so for purposes of harassing or punishing the defendant. United States v. Chagra, 669 F.2d 241, 247-48 (5th Cir. 1982). When the purpose for a superseding indictment "can be traced to a legitimate, non-vindictive rationale . . . the government may proceed with its new charges." Id. at 248; see United States v. Bucci, 582 F.3d 108, 112 (1st Cir. 2009) ("It is difficult to make [a vindictive prosecution] showing pretrial, however, in light of the broad discretion afforded the prosecutor to determine who should be prosecuted and for what crime, and the presumption that the prosecutor has exercised that discretion in good faith."). Here, nothing suggests that the government acted in bad faith by bringing the charges into conformity with the post-Davis law.

government had produced on April 8, 2022. The same day that Padilla filed his supplemental motion, the district court held a hearing after which it denied both motions.

We review the denial of a motion for continuance for abuse of discretion. United States v. Delgado-Marrero, 744 F.3d 167, 195 (1st Cir. 2014). Because "[t]rial management is peculiarly within the ken of the district court," such courts have substantial leeway to control their dockets. United States v. Saccoccia, 58 F.3d 754, 770 (1st Cir. 1995). Therefore, an abuse of discretion in denying a continuance exists only when there has been "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." Id. (quoting Morris v. Slappy, 461 U.S. 1, 11-12 (1983)). Factors to consider in making this determination include the reasons presented in support of the motion, the party's diligence, the inconvenience to the court, and the utility of the continuance. Id.; United States v. Williams, 630 F.3d 44, 48 (1st Cir. 2010). Additionally, a party seeking to establish an abuse of discretion for the denial of a continuance must provide "specific, concrete ways in which the denial resulted in 'substantial prejudice' to [their] defense." United States v. Carbone, 110 F.4th 361, 372 (1st Cir. 2024) (quoting Delgado-Marrero, 744 F.3d at 196).

The district court's denials of Padilla's eleventh-hour continuance requests were well within its discretion. We cannot

ignore the obvious fact that twelve years elapsed between the robbery and the start of trial. As the court observed at the motions hearing, there was reason for concern about the reliability of the evidence, particularly given this lengthy time gap. Padilla's counsel himself expressed concern for his own memory, which led the court to state that his fears were precisely why "[it] can't continue [the trial]."

General delay concerns aside, Padilla failed to show that he needed these particular continuances. The motions asserted two different reasons: the production of cell phone location records on April 8, 2022, and the disclosure of Jencks material on April 15, 2022. For the cell phone records, the government agreed at the motions hearing not to introduce the records for location purposes. This addressed Padilla's concern about the need for his counsel to educate himself about the location data. And as for the Jencks material, the disclosure indicated that Samuel Figueroa, a previously uncooperative witness, would testify for the government. Although Padilla did not learn of Figueroa's participation until April 15, 2022, he knew Figueroa well -- they were co-defendants in a previous prosecution -- and thus could not claim unfamiliarity with the new witness. Moreover, the information Padilla sought about Figueroa was, as the district court aptly described it, largely "collateral impeachment" evidence. Under the circumstances, Padilla's desire for more time

to pursue such evidence was not a sufficient basis to again delay the trial.

In any event, Padilla's argument about Figueroa also fails because he has not demonstrated prejudice from the denial of his motion.  At the motions hearing, the district court described Padilla's request as a "fishing expedition" because he failed to identify any particular evidence for which he was looking. Even now, Padilla repeats the same conclusory argument that more time would have led to more "impeachment evidence."  But Padilla did impeach Figueroa at trial.  Without reference to specific impeachment evidence that may have made a difference, we cannot conclude that the court's ruling prejudiced the defense.

### 2. Requests for Additional Funds

Padilla also argues that the district court improperly denied him funds for expert services that he requested in April 2022, and for investigatory services he requested in a series of motions filed in late 2021.  He also argues that the court wrongly denied his motion without convening a hearing so that he could explain his requests.

Like the denial of continuance motions, we review for abuse of discretion the denial of a funds request. United States v. Correa-Alicea, 585 F.3d 484, 491 (1st Cir. 2009).  Under 18 U.S.C. § 3006A(e)(1), counsel for an indigent defendant may request additional funding from the court for investigatory or

expert services.  Courts typically grant funds for such services where the services are "pivotal to the indigent defendant's defense."  United States v. Manning, 79 F.3d 212, 218 (1st Cir. 1996).  The burden rests with the applicant to show why funds are necessary.  See United States v. Mateos-Sanchez, 864 F.2d 232, 240 (1st Cir. 1988).  Courts have "substantial leeway" to determine if a defendant has met this burden of showing necessity.  United States v. Prieto, 812 F.3d 6, 16 (1st Cir. 2016).  Only a "clear and convincing showing that the constraint [on funds] prejudiced the defendant" will support a new trial.  Id.

We first address the April 2022 denial of Padilla's request for funds for expert services to interpret the phone records disclosed on April 8, 2022.  A review of the docket reveals that Padilla never actually submitted a motion for funds. In his April 20, 2022, supplemental motion for a continuance, Padilla stated that he needed time to retain an expert to interpret the cell phone records.  But he never followed up on this statement with a request for funds.  The district court cannot be faulted for not providing what it was never asked to give.  Cf. United States v. Scott, 48 F.3d 1389, 1395-96 (5th Cir. 1995) (holding that in absence of reference to the statute or defendant's financial ability, a request for time to hire an expert will not be construed as a request for funds).

We turn next to the two ex parte motions for funds that Padilla did file. In October 2021, Padilla requested funds to cover approximately forty hours of investigatory work so that his private investigator could assist his counsel in trial preparation. The district court denied that motion, stating that it would not fund a private investigator to help with trial preparation. But the court left open the possibility of approving funds if Padilla engaged the investigator for appropriate investigator services. In November 2021, Padilla moved to reconsider; the court denied that motion because Padilla had failed to allege any new grounds.

In December 2021, Padilla filed a second funds motion, requesting $2,500 so that his investigator could attend witness interviews because of supposed government misconduct. The district court denied this motion, concluding that Padilla's fears of government misconduct were unsubstantiated. As with the October motion, the court stated that it would reconsider if Padilla filed a sufficiently grounded request.

The district court appropriately denied both ex parte motions. Both motions fell short of containing the specificity required to support a request for funds. The first did not identify what Padilla's counsel wanted the private investigator to do in assisting with trial preparation, and the second did not detail any grounds for fearing government misconduct. See

- 13 -

Mateos-Sanchez, 864 F.2d at 240 (holding that funding requests require specificity and that general allegations of usefulness do not suffice).  Moreover, the court invited Padilla to supply the missing specificity in motions for reconsideration, but Padilla did not take up the offer.  In short, there was no abuse of discretion in denying Padilla's funds requests.[3]

## C.    Credibility Findings

Padilla argues at length about the damaged credibility of several government witnesses based on contradictory and internally inconsistent statements.  He contends that the testimony from these witnesses was so incredible that it could not have supplied a basis for the district court to find him guilty beyond a reasonable doubt.  But there is a fundamental flaw in the argument: it is at bottom a challenge to credibility findings that the district court may or may not have made.

As previously noted, Padilla did not request that the district court make specific findings of fact under Federal Rule of Criminal Procedure 23(c).[4]  We therefore do not know what

---

[3]    Padilla complains that the district court erred in not holding a hearing on his December 2021 motion.  But we cannot fault the court for declining to convene a hearing when a funding request is, on its face, inadequately justified -- especially when a defendant does not accept a court's invitation to address its concerns in writing.  See Prieto, 812 F.3d at 15-16.

[4]    Padilla argues that because he made a Rule 29 motion for acquittal, he impliedly made a Rule 23(c) motion for specific

testimony the court credited and what it rejected. Consequently, we may only ask whether there was sufficient evidence to support the court's verdict. And as Padilla implicitly recognizes by not arguing otherwise, there was substantial support for his convictions. That he may have successfully impeached some witnesses on some points is not a basis for upsetting the verdict. United States v. Rosario-Pérez, 957 F.3d 277, 291 (1st Cir. 2020) (stating that "reliability and credibility of in-court witnesses are matters for [the finder of fact] to determine").

## D. Exclusion of Prior Inconsistent Statements and Polygraph Evidence

Padilla concludes by challenging several evidentiary and trial management rulings. None of his arguments has merit.

Padilla first argues that the district court improperly barred him from introducing prior inconsistent statements by witnesses Anabel Ayala and Miguel Maldonado. He also argues that the court abused its discretion by refusing to let him ask Maldonado leading questions on direct examination to elicit prior inconsistent statements for impeachment, in violation of Federal Rules of Evidence 611(c) and 613. But our review of the record reveals that Padilla did in fact introduce Ayala's prior

---

credibility findings. Padilla provides no support for this proposition, which he raises for the first time in his reply brief. The argument is waived. See United States v. Torres, 162 F.3d 6, 11 (1st Cir. 1998).

- 15 -

inconsistent statements through the testimony from the FBI agent who interviewed her two days after the robbery. And as to Maldonado, Padilla did not attempt, at trial or now, to demonstrate why he was a hostile witness or a witness identified with an adverse party. Thus, the court acted within its discretion by precluding leading questions on direct examination.[5] Fed. R. Evid. 611(c).

Finally, Padilla argues that the district court should have granted him access to certain polygraph results. At the district court, the government provided Padilla a list of five individuals to whom the FBI had administered polygraph tests during the investigation. Padilla moved initially to obtain the results from these tests because "prosecutors have a duty to produce <u>Brady</u> material for all relevant government agencies." The government responded that the prosecutor was not in possession of the polygraph results for the identified individuals but represented that only two of the individuals were potential trial witnesses. The government said that it would seek the test results and provide them to Padilla if they could be located.

Despite the government's apparent willingness to provide the results, the district court issued an order relieving it of

---

[5] Padilla also did not make any other attempt to introduce Maldonado's prior inconsistent statements as allowed under Fed. R. Evid. 613.

any obligation to do so. Rather than accepting Padilla's framing of the issue as arising under Brady, the court considered the issue under Federal Rule of Criminal Procedure 16.[6] That rule requires the government to produce items in its possession if the items are material to preparing the defense. Fed. R. Crim. P. 16(a)(1)(E)(i). The court found that the polygraph tests were immaterial under this rule because the court "would not place any weight on polygraph results and . . . will not admit them at trial." Thus, the court concluded that "there is no need for the government to disclose them."

Padilla responded to this order by seeking reconsideration. In so doing, he argued that it was "obvious" that the requested test results were "material to a witness's credibility" and thus discoverable. In his motion to reconsider, Padilla again mentioned Brady but did not discuss Rule 16 or cite a single case about its application. The district court denied Padilla's motion, concluding that he had not adequately developed his argument.

---

[6] The district court did not explain why it converted Padilla's Brady-based motion to compel into one made pursuant to Rule 16, even though the two motions invoke different tests for production. That said, Padilla does not argue to us that he was somehow prejudiced by the court's unilateral conversion of his motion, and thus, to the extent he may mean to suggest he was, the argument is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 17 -

Even if we were to disagree with the merits of the district court's Rule 16 ruling, we see no basis for relief. "To succeed on a claimed violation of Rule 16, a defendant must demonstrate that he has been prejudiced." United States v. Rosario-Peralta, 175 F.3d 48, 53 (1st Cir. 1999). Padilla has not done so.

Padilla does not claim that the undisclosed polygraph results were favorable to him. But even if they were, the district court, who was the fact finder at trial, stated plainly that it did not "place any weight on the polygraph results." Padilla also has developed no argument on how he may have used the polygraph results to locate additional evidence that would have supported his defense. Thus, he argues only that if he had received the results and they turned out to be favorable to him, he could have used them for impeachment purposes.

Ultimately, Emanuel Cosme-Rosa was the only government witness for whom Padilla did not receive polygraph results. Even without these results, Padilla impeached Cosme's credibility through his prior inconsistent statements and the testimony of an FBI agent. Thus, the polygraph results would have been cumulative. Moreover, given the district court's negative view about polygraph evidence and the impeachment evidence that Padilla was able to use, we view as negligible any resulting prejudice from the court's Rule 16 ruling. That is especially so given the other strong

evidence against Padilla which included multiple cooperating witnesses and the physical evidence, which included cell phone records connecting Padilla to several witnesses during the robbery.

*** 

We have considered all remaining arguments that Padilla raises and conclude that none of them provides a basis for ordering a new trial.

**Affirmed**.